IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JASON ALSTON**                                                      **PLAINTIFF**

**V.**                          **CIVIL ACTION NO. 4:16-cv-245-DMB-JMV**

**PRAIRIE FARMS DAIRY, INC. d/b/a LUVEL**                    **DEFENDANT**

**RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Prairie Farms Dairy, Inc., formerly LuVel ("Defendant" or "Prairie Farms"), by and through its counsel of record, and submits this Response in Opposition to Plaintiff's Motion for Summary Judgment [41]. As demonstrated by Prairie Farms' Motion for Summary Judgment [43] and this response, there are no disputed issues of material fact, and Prairie Farms is entitled to judgment on each of Plaintiff Jason Alston's ("Plaintiff" or "Alston") claims.

**INTRODUCTION**

This lawsuit arises from the termination of Alston's employment with Prairie Farms for poor performance. Prairie Farms hired Alston to load dairy products onto trucks for delivery to customers but was forced to terminate his employment when he was unable to meet the performance expectations of the position, negatively impacting Prairie Farms' operations. Contrary to Alston's allegations, at no point prior to or during his employment with Prairie Farms was any decision maker aware of any protected activity by Alston regarding a prior employer. However, in response to his termination, Alston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming he was retaliated against in violation of Title VII of the Civil Rights Act for filing charges of discrimination against his

former employer, Mississippi Department of Transportation ("MDOT"). Following the dismissal of his charge by the EEOC, Alston filed this lawsuit.

Alston has now moved the Court for summary judgment in his favor but has failed to demonstrate that he is entitled to judgment as a matter of law. Rather, Alston's allegations against Prairie Farms are based purely on unsupported speculation and are wholly without merit. Accordingly, the Court should deny Alston's motion and grant summary judgment in favor of Prairie Farms.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Prairie Farms processes and distributes dairy products from its location in Kosciusko, Mississippi. *Papen Declaration, Ex. "A."* Prairie Farms is an equal opportunity employer, and its policies explicitly prohibit discrimination in employment decisions on the basis of race or other protected characteristics. *Id.*; *Collective Bargaining Agreement – Article XXI (Nondiscrimination), Att. "A-1" to Papen Dec.*

Alston began working for Prairie Farms on October 26, 2015 as a general laborer or "trailer man" in the Company's cooler with responsibilities of loading trucks with dairy for delivery to customers. *Alston Dep., Ex. "B," p. 34, 66-67*; *New Employee Information Sheet, Att. "A-2" to Papen Dec.*; *Smith Declaration, Ex. "C;" Hutchison Declaration, Ex. "D;" Riley Declaration, Ex. "E."* A carousel-type mechanism brings cases of product from the facility to the loading area and other hydraulic machines, commonly referred to as "pushers," pass the cases to the "trailer man" inside the trucks for loading. *Alston Dep., Ex. "B," p. 79-80; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Riley Dec., Ex. "E."* Prairie Farms employs one "trailer man" on the day shift and one on the evening shift. *Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;"*

---

[1] Prairie Farms hereby restates and reasserts the following statement of undisputed material facts in this matter as originally set forth in its memorandum in support of Prairie Farms' motion for summary judgment [44].

2

*Riley Dec., Ex. "E."* Alston was assigned to work the evening shift. *Alston Dep., Ex. "B," p. 61-62; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Riley Dec., Ex. "E."*

Alston applied in person on October 5, 2015 and was interviewed that same day - first by Brad Hutchison, former Cooler Manager, and second by Rodney Smith, Plant Manager. *Alston Dep., Ex. "B," p. 59; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Application for Employment, Att. "A-3" to Papen Dec.* According to Alston, he applied to work at Prairie Farms multiple times prior to being hired and had always considered a position with the Company to be his "dream job." *Alston Dep., Ex. "B," p. 53-57.* The decision to hire Alston was made jointly by Hutchison and Smith, and, after conferring with Hutchison, Smith informed Alston of Prairie Farms' decision to hire him pending successful completion of Prairie Farms' standard pre-employment reference checks and drug test. *Alston Dep., Ex. "B," p. 60; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D."* On his application for employment, Alston listed MDOT as his most recent employer and Marty Price as his supervisor. *Alston Dep., Ex. "B," p. 70; Application for Employment, Att. "A-3" to Papen Dec.* In responding to a question on the application regarding which of his previous employment experiences he enjoyed the most, Alston stated, "Mississippi Department of Transportation (MDOT) we worked as a team, we looked out for each other. It feel[s] like a family." *Alston Dep., Ex. "B," p. 68-71; Application for Employment, Att. "A-3" to Papen Dec.*

Prior to Alston's application for employment, neither Hutchison nor Smith knew Alston, that he worked for MDOT, or that he was supervised by Price. *Alston Dep., Ex. "B," p. 63-65, 102-105; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D."* Pursuant to standard practice, Hutchison contacted Price for an employment reference after Alston applied with Prairie Farms. *Alston Dep., Ex. "B," p. 145;.Hutchison Dec., Ex. "D."* Price gave Alston a favorable reference

3

indicating that he came to work on time and did not have a history of excessive absences. *Hutchison Dec., Ex. "D."* Neither Price nor Alston shared any additional information with Hutchison or Smith regarding Alston's employment with MDOT. *Hutchison Dec., Ex. "D."*

The evening shift Cooler Supervisor at the time, Donny Riley, supervised Alston's day-to-day performance and was responsible for training him to correctly load the trailers. *Alston Dep., Ex. "B," p. 60, 79-80; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Riley Dec., Ex. "E."* Typically, it takes between three (3) and four (4) shifts to train new employees in Alston's position. *Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Riley Dec., Ex. "E."* However, almost immediately, Riley observed that Alston was not able to keep up with his work assignments. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Even after almost two (2) weeks, Alston was not able to complete his loading assignments in a timely fashion, putting deliveries behind schedule. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Rather than Alston completing his duties on his own, as required by the position, Riley was forced to work alongside him the majority of each shift in order to load the trucks on time, taking him away from his supervisory and other duties. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Other employees also complained that Alston was unable to meet expectations on his own. *Alston Dep., Ex. "B," p. 80-82; Riley Dec., Ex. "E."*

Alston, like all employees, was initially hired on a trial basis for the first ninety (90) days of employment pursuant to the governing collective bargaining agreement ("CBA"), which provides that employees may be terminated in the Company's sole discretion. *Alston Dep., Ex. "B," p. 86-88; Collective Bargaining Agreement – Article XI (Probationary Period), Att. "A-1" to Papen Dec; Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Papen Dec., Ex. "A."* The Company must determine whether an employee has the desire and/or the potential to be

4

successful. *Smith Dec., Ex. "C;" Hutchison Dec., Ex. "D;" Papen Dec., Ex. "A."* If not, it serves no one's interest to keep the employee. *Id.* After Riley brought his concerns regarding Alston's performance to Hutchison, Hutchison again consulted with Smith. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Riley, Smith, and Hutchison all agreed that Alston was not a good fit for the position. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Based on Riley's concerns and recommendations, Hutchison and Smith determined that Alston was not likely to be successful in the position and discharged his employment for this reason effective November 5, 2015. *Alston Dep., Ex. "B," p. 34, 90-92; Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C;" Separation Notice, Att. "A-4" to Papen Dec.; Papen Dec., Ex. "A."*

In response, Alston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and later this suit, claiming Prairie Farms, and specifically Hutchison, conspired with Alston's former supervisor, Marty Price, to convince him to leave MDOT to go to work for Prairie Farms in order to then terminate his employment in retaliation for Alston having previously filed charges of discrimination against MDOT. Because Alston cannot identify any evidence supporting his claims of unlawful retaliation, he is unable to demonstrate that he is entitled to judgment as a matter of law and his motion for summary judgment must therefore be denied. As evidenced herein and as set forth by Prairie Farms in its previously filed motion for summary judgment [43] and memorandum in support thereof [44], Alston's claims are wholly without merit, and Prairie Farms is entitled to summary judgment.

## **LEGAL ARGUMENT**

### A. Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A complete failure of proof on an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 317.

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Factual controversies are only to be resolved in favor of the non-movant when "both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. In responding to Defendants' motion, Plaintiff must produce "significant probative evidence" to support his claim. *First Nat'l Bank of Commerce v. Monaco Agency, Inc.*, 911 F.2d 1053, 1057 (5th Cir. 1990) ("A mere scintilla of evidence in support of the plaintiff's position is insufficient to survive summary judgment.").

**B. Alston's claims against Prairie Farms for retaliation in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981 fail as a matter of law.**

Alston alleges Prairie Farms unlawfully retaliated against him in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Where, as here, a plaintiff offers no direct evidence of unlawful retaliation, the burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies to the summary judgment analysis of retaliation claims under Title VII and Section 1981.[2] *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014) *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015). To be entitled to judgment as a matter of law, Alston must first establish a prima facie case of unlawful retaliation by showing that: "(1) [he] engaged in activity protected by Title VII; (2) [Prairie Farms] took adverse employment action against [Alston]; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quotation marks and citation omitted).

Only if Alston satisfies his prima facie case does the burden of production shift to Prairie Farms to rebut the prima facie case by articulating a legitimate, nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). However, the ultimate burden of proving retaliation remains with Hayes at all times. *Id.* at 507. If Prairie Farms is able to articulate a legitimate, non-retaliatory reason for the employment action, Alston must prove that Prairie Farms' proffered reason is actually pretext for a retaliatory purpose. *Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008)*.* In doing so, Alston must prove that "the adverse employment action taken against [him] would not have occurred 'but for' [his] protected

---

[2] "[R]etaliation claims under § 1981 and Title VII . . . are parallel causes of action. Each requires proof of the same elements in order to establish liability." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 403–04 n. 2 (5th Cir. 1999); *Irby v. Sullivan*, 737 F.2d 1418, 1429 (5th Cir. 1984)).

7

conduct." *Septimus v. Univ. of Houston,* 399 F.3d 601, 608 (5th Cir.2005); *see also Zamora*, 798 F.3d at 331 ("[A] plaintiff asserting a Title VII *retaliation* claim must meet a higher standard of causation. Such a plaintiff 'must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'") (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —–U.S. ——, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013)).

### 1. Alston fails to meet his burden to prove unlawful retaliation and has not shown he is entitled to judgment as a matter of law in his favor.

In moving the Court to enter summary judgment in his favor, Alston relies upon inadmissible hearsay, unsubstantiated assertions, unauthenticated documents, and irrelevant allegations. Alston fails to demonstrate, through competent summary judgment evidence, that he is entitled to judgment in his favor with regard to his unsupported claims that Prairie Farms unlawfully retaliated against him.

As an initial matter, many of Alston's arguments support entry of summary judgment *in Prairie Farms' favor.* In particular, Alston's claim that he worked more than forty (40) hours per week during his brief employment supports Prairie Farms legitimate, non-retaliatory reason for terminating his employment – because he was unable to keep up with the demands of the position and was unable to complete his assignments in a timely manner. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Similarly, as set forth in Prairie Farms' initial memorandum in support of its motion for summary judgment and explained more fully herein below, Alston's admission that he applied to work for Prairie Farms on multiple occasions prior to his filing a charge with the EEOC against his former employer, MDOT, because working with Prairie Farms was his "dream job" directly contradicts his allegations that Price and Hutchison conspired to convince him to leave his position with MDOT so that Prairie Farms could terminate his employment in retaliation. *See* [42]; *Alston Dep., Ex. "B," p. 53-57.*

8

Further, Alston admits Hutchison worked on a different shift and therefore would have had to rely on the recommendation of Alston's direct supervisor, Donny Riley, regarding Alston's performance and suitability for the position. *See* [42]. Importantly, Riley has testified that he initially brought concerns regarding Alston's performance to Hutchison and Smith after he observed that Alston was not able to keep up with his assignments. *Riley Dec., Ex. "E."* Riley agreed with the decision to terminate Alston's employment, was present when Alston was notified of the termination of his employment, and had no knowledge of any protected activity by Alston or any relationship with Price. *Id.* The evidence clearly demonstrates Alston was terminated for the legitimate, non-retaliatory reason that he could not perform the requirements of the position in a timely manner and not in retaliation for his filing EEOC charges against MDOT.

**2. Alston's claim is precluded by the equitable doctrine of judicial estoppel where he asserted in a previous proceeding that he was constructively discharged from his prior employment and not that he left to work for Prairie Farms after encouragement from his former supervisor.**

As an initial matter, Alston is estopped from claiming that he was coerced or otherwise enticed into leaving his employment with MDOT by his claims in a separate lawsuit currently pending before this Court. In the matter of *Alston v. Miss. Dept. of Transp.*, No. 4:16-CV-236-DMB-JMV, Alston has alleged that he was forced to quit his position because he was subjected to a hostile work environment, not because he was encouraged by his supervisor to apply for a position with Prairie Farms. *Id.* at Dkt. No. 1; *see also Alston Dep., Ex. "B," p. 128-29.* Alston filed his initial complaint against MDOT on November 29, 2016, fourteen (14) days before filing the instant action against Prairie Farms.[3] *Id.*; *see also Alston's Complaint Against Prairie*

---

[3] Notably, Alston has subsequently filed three (3) amended complaints in his suit against MDOT and has never alleged that he left MDOT's employment at the insistence of his former supervisor, Marty Price. *Alston v. Miss. Dept. of Transp.*, No. 4:16-CV-236-DMB-JMV, Dkt. Nos. 21, 64, 70.

*Farms,* Dkt. No. 1.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "The aim of the doctrine is to 'protect the integrity of the judicial process.'" *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *New Hampshire,* 532 U.S. at 749–50, (citation and internal quotation marks omitted)). Whereas Alston previously asserted a claim against MDOT for constructive discharge based on allegations of a hostile work environment, he is now precluded by law from asserting a claim of retaliation against Prairie Farms based on completely inconsistent allegations that he quit his former employment voluntarily after being aggressively encouraged to do so by his former supervisor in collusion with Prairie Farms.

### 3. Alternatively, Alston cannot demonstrate any causal connection, much less but-for causation, between his prior charges of discrimination against his previous employer and the discharge of his employment for poor performance by Prairie Farms.

Even if Alston's claim against Prairie Farms was not barred by the doctrine of judicial estoppel, Alston's position in his suit against MDOT and his arguments in support of summary judgment are consistent with the evidence here, and he can offer no evidence to support his claim that Hutchison and Price "conspired" to have him resign his employment with MDOT so that Prairie Farms could retaliate against him by later terminating his employment.[4] Specifically, near the time of his resignation of employment with MDOT, on the same day he began work at Prairie Farms, Alston stated that he was forced to resign from MDOT due to a hostile work

---

[4] In moving for summary judgment, Alston claims Riley instructed him to "get in raw sewage with no protective gear . . ." and attaches unauthenticated and inadmissible photographs as Exhibit "F" to his motion. It is unclear what, if any, relevance this claim has to the instant lawsuit as Alston has not alleged any claim of harassment or hostile work environment, either at the EEOC charge stage or in his Complaint, and the time for doing so has long expired. *See* [1, 1-1]. Alston has provided no evidence Riley had any knowledge of any protected activity by Alston or that Riley even knew Price. *See Riley Dec., Ex. "E."* Accordingly, the Court should disregard this irrelevant and unsubstantiated allegation.

10

environment. *Alston Dep., Ex. "B," p. 153-54; MDOT Exit Interview (Voluntary Resignation Form), Ex. "F."* At the time, Alston stated on his MDOT Exit Interview form, "Due to constructive discharge tactics used regularly by my supervisors. I am forced to resign my position. See EEOC cases pending." *Id.*

Further, Alston's sworn testimony in the instant matter is that he applied for employment with Prairie Farms on his own initiative, was interviewed, and received a conditional offer of employment, pending successful background and drug screenings, prior to informing Price and MDOT of his intent to resign his employment in favor of the cooler position at Prairie Farms. *Alston Dep., Ex. "B," p. 59-60, 63-65, 102-105.* Importantly, Alston testified that he did not even become aware that Hutchison and Price were acquainted until *after* he had already applied and been interviewed for the cooler position. *Id.* There is simply no evidence whatsoever that Hutchison "conspired and plotted with his 'good friend' and Plaintiff's former supervisor at MDOT, Marty Price, to get Plaintiff to quit at MDOT and come to work for [Prairie Farms]" as alleged in Alston's Complaint. *See* Dkt. No. 1.

Additionally, Alston admits he has no evidence to support his contention that Hutchison and Price conspired to have him terminated from Prairie Farms in retaliation for his having filed prior charges of discrimination against MDOT. *Alston Dep., Ex. "B," p. 99-100, 141-47.* Alston's direct supervisor Donny Riley, not Hutchison, initially raised concerns regarding his performance and ability to fulfill the demands of the position. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C."* Based on Riley's concerns and recommendations, Hutchison and Smith determined that Alston was not likely to be successful in the position and discharged his employment for this reason.[5] *Id.* Importantly, neither Riley nor Smith had any

---

[5] Alston claims Prairie Farms and Hutchison should have appeared for a telephonic hearing with the Mississippi Department of Employment Security ("MDES") regarding his application for unemployment benefits following the

11

relationship with Price at the time of Alston's termination for poor performance, and Alston admits he has no evidence to support any finding that Hutchison and Price conspired to have him fired by Prairie Farms. *Alston Dep., Ex. "B," p. 99-100, 141-47; Riley Dec., Ex. "E;" Smith Dec., Ex. "C."* In fact, while Alston has submitted a copy of his charge against MDOT and an internal MDOT document dated before his application to and hire by Prairie Farms, there is absolutely no evidence Hutchison, or any other Prairie Farms employee, had any knowledge whatsoever of Alston's prior charges against MDOT.[6] *Hutchison Dec., Ex. "D;" Riley Dec., Ex. "E;" Smith Dec., Ex. "C."*

Rather, Alston merely disputes Prairie Farms' assessment of his performance and speculates without evidence that his discharge was the result of a retaliatory motive.[7] It is well-established that such unsubstantiated assertions cannot take the place of actual evidence and are insufficient to defeat summary judgment. *See TIG Ins. Co.*, 276 F.3d at 759; *Little*, 37 F.3d at 1075; *First Nat'l Bank of Commerce*, 911 F.2d at 1057. Further, even if Alston could offer any evidence supporting his claim that Prairie Farms undervalued his performance, which he cannot, that would not be enough to prevent summary judgment here. *See Sandstad v. CB Richard Ellis,*

---

separation of his employment from Prairie Farms and provided MDES with an explanation for the separation of his employment. However, not only did Alston fail to produce the purported, but unverified, transcript attached to his motion for summary judgment as Exhibit "A" to Prairie Farms in discovery, Alston's application for unemployment benefits is wholly irrelevant to the legal questions at issue – namely, whether Luvel terminated his employment in retaliation for any protected activity. Moreover, the purported transcript shows Alston improperly filed an appeal with MDES and the Administrative Law Judge terminated the telephonic hearing prior to contacting Prairie Farms. *See* [41-1]. As with his other arguments, Alston fails to demonstrate any retaliatory motive related to his employment with Prairie Farms.

[6] Alston argues summary judgment should be granted in his favor because Price is now employed by Prairie Farms. However, it is undisputed that Price was employed by MDOT when Alston applied, was hired, and ultimately was discharged by Prairie Farms. Alston has provided no evidence whatsoever that Price conspired with Hutchison, Smith, Riley, or any other Prairie Farms employee to retaliate against him.

[7] Further, Alston's claim that he was a hard worker is irrelevant and immaterial as Prairie Farms terminated his employment because he was unable to complete his assignments in a timely manner, resulting in downstream production delays. *Riley Dec., Ex. "E;" Hutchison Dec., Ex. "D;" Smith Dec., Ex. "C;" see also Alston Dep., Ex. "B," p. 92-93.*

*Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact."); *see also LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.").

Because Alston cannot demonstrate through competent summary judgment evidence a genuine issue of material fact with regard to whether *any* causal connection exists between the termination of his employment for poor performance and his prior charges against a former employer, much less evidence sufficient to establish the high burden of proof of a retaliation claim's "but for" causation standard, his claim must be dismissed and summary judgment granted in favor of Prairie Farms.

## CONCLUSION

Plaintiff Jason Alston is correct that there are no genuine issues of material fact necessitating a trial in this matter. However, because Alston cannot identify any evidence supporting his claims of unlawful retaliation, he is unable to demonstrate that he is entitled to judgment as a matter of law and his motion for summary judgment must therefore be denied. Accordingly, Prairie Farms respectfully requests the Court deny Plaintiff's motion, grant summary judgment in its favor as to each of Alston's claims, and dismiss this action in its entirety with prejudice.

THIS, the 21st day of November, 2017.

RESPECTFULLY SUBMITTED,

*/s/ Blythe K. Lollar*
Blythe K. Lollar (MS Bar No. 104554)
blythe.lollar@ogletreedeakins.com
Timothy W. Lindsay (MS Bar No. 1262)
timothy.lindsay@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK

13

        & STEWART, P.C.
207 West Jackson Street
Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 360-8444
Facsimile: (601) 360-0995
**ATTORNEYS FOR DEFENDANT
PRAIRIE FARMS DAIRY, INC.
FORMERLY LUVEL**

## CERTIFICATE OF SERVICE

I, Blythe K. Lollar, hereby certify that a copy of the foregoing has been served via the Court's Electronic Filing System and via Certified U.S. Mail, which sent notification of such filing to the following:

Jason Alston
223 Third Avenue
Kosciusko, MS 39090
Telephone: 662-289-4687

*Pro Se Plaintiff*

On this the 21st day of November, 2017.

        /s/ Blythe K. Lollar_____
        Blythe K. Lollar

32080561.1