IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JASON ALSTON**                                                                        **PLAINTIFF**

V.                                                                        NO. 4:16-CV-245-DMB-JMV

**PRAIRIE FARMS DAIRY, INC.**
d/b/a Luvel                                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross motions for summary judgment, Docs. #41, #43; and a number of related motions filed by Jason Alston, Docs. #52, #53, #56, #61, #73, #83.

## I
## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (internal quotation marks omitted).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs,*

*L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (alterations and internal quotation marks omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Factual Background

Jason Alston worked at the Mississippi Department of Transportation ("MDOT") from September 1, 2012, until October 26, 2015. Doc. #43-6; *see* Doc. #42 at 4. Alston's supervisor at MDOT was Martin Price. Doc. #42 at 4; Doc. #43-2 at 145. While employed by MDOT, Alston filed at least one charge of discrimination with the EEOC.[1] Doc. #41-4.

On October 5, 2015, Alston applied in-person to work at Prairie Farms. Doc. #44 at 2; Doc. #48-1 at ¶ 5. He was interviewed by Brad Hutchison and Rodney Smith. Doc. #43-2 at 59; Doc. #48-1 at ¶ 5. After interviewing Alston, Hutchison and Smith made the decision to hire Alston. Doc. #43-2 at 60; Doc. #43-3 at ¶ 7. In accordance with Prairie Farms' standard hiring procedure, Hutchison contacted Price for an employment reference. Doc. #48-1 at ¶ 7. Price gave Alston a "favorable reference indicating that he came to work on time and did not have a history of excessive absences." Doc. #43-4 at ¶ 10.

---

[1] The number of EEOC charges Alston filed against MDOT is unclear. Although Alston states that he filed two charges of discrimination against MDOT—one on June 10, 2015, and another on July 13, 2015, *see* Doc. #46 at 5—the record contains only his July 13 charge. Doc. #41-4. Notably, in his July 13 charge, Alston represents that it is his second charge of discrimination against MDOT. *Id.*

On October 26, 2015, Alston began working as a general laborer or "trailer man" in Prairie Farms' cooler where he loaded delivery trucks. Doc. #43-2 at 79; Doc. #48-1 at ¶ 4. Pursuant to Prairie Farms' collective bargaining agreement, Alston was "initially hired on a trial basis for the first ninety (90) days of employment," during which time "employees may be terminated in [Prairie Farms'] sole discretion." Doc. #43-1 at ¶ 8.

At Prairie Farms, Alston was trained and supervised by Donny Riley. Doc. #43-2 at 61, 80; Doc. #43-5 at ¶ 8. "Almost immediately" after Alston began working, Riley noticed that Alston had trouble keeping up with his assignments and voiced this concern to Smith and Hutchison. Doc. #43-5 at ¶ 9. Alston's subpar work performance continued for nearly two weeks, requiring Riley to help Alston load trucks to ensure on-time deliveries. *Id*. at ¶ 10. Riley, Smith, and Hutchison all agreed that Alston was "not a good fit for the position" and, based on Riley's concerns and recommendations, Smith and Hutchison terminated Alston's employment on November 5, 2015. *Id*. at ¶ 12.

Subsequently, Alston filed a charge of discrimination against Prairie Farms with the EEOC alleging that Price "insisted" that he quit working at MDOT and work for Price's friend, Hutchison, at Prairie Farms. Doc. #1-1 at 1.[2] On September 30, 2016, Alston received a right to sue letter. Doc. #1-2.

## III
## Procedural History

On December 13, 2016, Alston filed a complaint against Prairie Farms in the United States District Court for the Northern District of Mississippi, alleging violations of Title VII and 42

---

[2] Alston's EEOC charge against Prairie Farms is not part of the summary judgment record but is attached to his complaint, Doc. #1-1, and referenced by Alston in his summary judgment briefing, Doc. #46 at 6. *See Olguin v. Wathen*, No. 7:02-cv-168, 2003 WL 22137482, at *1 (N.D. Tex. Sept. 16, 2003) (considering exhibits attached to complaint on motion for summary judgment).

U.S.C. § 1981. Doc. #1. Prairie Farms answered the complaint on January 13, 2017. Doc. #5. On November 3, 2017, Alston's then counsel of record filed a motion to withdraw as his attorney, which the Court granted on November 7, 2017. Doc. #38; Doc. #39. Since then, Alston has proceeded pro se.

After a period of discovery, Alston moved for summary judgment on November 7, 2017. Doc. #41. One week later, Prairie Farms moved for summary judgment. Doc. #43. On November 20, 2017, Alston responded to Prairie Farms' motion for summary judgment, Doc. #45, and also filed "Objections to Evidences and Declarations Submitted in Support of Defendant's Motion for Summary Judgment," Doc. #47. Prairie Farms responded to Alston's motion for summary judgment on November 21, 2017. Doc. #48. On November 27, 2017, Alston filed a "Reply in Further Opposition to Defendant's Motion for Summary Judgment"[3] Doc. #49, and Prairie Farms replied in support of its summary judgment motion, Doc. #51.

Also on November 27, 2017, Alston moved to strike certain declarations and deposition excerpts in Prairie Farms' motion for summary judgment. Doc. #52. Prairie Farms responded to the motion to strike on December 11, 2017. Doc. #58.

Thereafter, Alston filed a number of motions: on December 1, 2017, a motion to correct two dates in his November 27 reply, Doc. # 53, and a motion for the Court to take judicial notice of various documents, Doc. #56; on December 15, 2017, a motion for judgment as a matter of law, Doc. #61; on March 19, 2018, a motion to continue trial, Doc. #73, and a motion for sanctions, Doc. #74; and finally, on April 5, 2018, a motion to strike all of Prairie Farms' responsive pleadings and for entry of default judgment, Doc. #83.[4] To date, with the exception of the motion

---

[3] The Court construes this filing as a response in further opposition to Prairie Farms' motion for summary judgment.

[4] On April 13, 2018, Alston filed an "Early Reply" in support of his motion to strike and for default judgment. Doc. #89. Because there is no response by Prairie Farms to which to reply, the filing will not be considered.

for sanctions, Prairie Farms has not responded to any of these motions.[5] Alston's motion for sanctions was denied by separate order on April 13, 2018. Doc. #88.

IV
**Discussion**

Alston alleges his employment at Prairie Farms was terminated in retaliation for his filing charges of race discrimination with the EEOC while employed at MDOT. Doc. #1 at 2.

**A. Retaliation under Title VII and § 1981**

A plaintiff may prove a claim of "retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When, as here, a plaintiff lacks direct evidence of discrimination, he "may yet prevail … by providing circumstantial evidence sufficient to raise an inference of discrimination. In such cases, courts apply the *McDonnell Douglas* burden-shifting framework." *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (internal citation omitted).

Under the *McDonnell Douglas* framework:

[T]he plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.

*Outley v. Luke & Assocs. Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (internal quotation marks and citations omitted).

"A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link

---

[5] Alston's motion to correct two dates in his November 27 filing, Doc. # 53, is granted as unopposed. L.U. Civ. R. 7(b)(3)(E) ("If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed.").

5

between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

"The elements of the claims under Title VII and 42 U.S.C. § 1981 are identical. [Courts] therefore evaluate both claims using the same analysis." *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 n.1 (5th Cir. 2001) (internal citation omitted).

### B. Alston's Motion for Summary Judgment

*1. Alston's motion for judicial notice of documents*

Alston moves this Court to take judicial notice of (1) the missing pages of his deposition; (2) a declaration of Timothy Lee; (3) a Mississippi Department of Employment Security ("MDES") determination decision; and (4) "Fact Finding [of] MDES." Doc. #56. In support, Alston asserts that judicial notice may be taken at any stage of the proceeding and states the relevant standard under Federal Rule of Evidence 201. *Id.* at 2.

"The contents of a deposition are not a clearly established 'fact' and are therefore inappropriate for judicial notice." *Roach v. Snook*, No. 1:14-cv-583, 2014 WL 7467000, at *2 (D. Or. Jan. 5, 2014) (citing *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 n.1 (9th Cir. 2010)). Accordingly, the Court will not take judicial notice of any part of Alston's deposition.

In the same vein, the contents of the declaration Alston wishes to have judicially noticed are not facts generally known or from a source whose accuracy cannot reasonably be questioned. *See, e.g.*, *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Haw. Dep't of Ed.*, 600 F.3d 1104, 1113 n.7 (9th Cir. 2010) (declarations must satisfy Federal Rule of Evidence 201 to be properly judicially noticed). Accordingly, the Court also will not take judicial notice of the proffered declaration.

The two remaining documents—a "Fact Finding" printout from MDES' website and an

MDES "Determination Decision"—are not subject to judicial notice because they have no bearing on the operative facts of this case. Federal Rule of Evidence 201 governs "Judicial Notice of Adjudicative Facts." An adjudicative fact is a "controlling or operative fact, rather than a background fact." BLACK'S LAW DICTIONARY (10th ed. 2014). Alston has not explained, nor can the Court conceive, how the two proffered documents relate to his retaliation claim.[6] *See, e.g., Allied Home Mortg. Capital Corp. v. Blues Alley Estates Ltd. P'ship*, No. 2:06-cv-161, 2008 WL 11342878, at *1–2 (N.D. Miss. Sept. 9, 2008) (denying motion to take judicial notice because underlying documents were not "controlling or operative facts to the issues presented"). Accordingly, Alston's motion for such documents to be judicially noticed will be denied.

### 2. Merits

In his summary judgment motion, Alston recounts the factual background of his claims and contends that (1) Prairie Farms could have discussed his subpar work performance during a telephonic hearing with MDES but that Prairie Farms never participated in the hearing and (2) Prairie Farms refuses to release relevant video footage that would show his work performance.[7] Doc. #42 at 5. Alston's motion for summary judgment does not explicitly address any step of the *McDonnell Douglas* framework.

Although Alston does not explicitly address any step of the *McDonnell Douglas*

---

[6] The "Fact Finding" document appears to be a log of MDES' attempts to contact Prairie Farms. *See* Doc. #56-2. The "Determination Decision" states that Prairie Farms has "not shown that the claimant was discharged for misconduct connected with the work … [and that Alston] is eligible for benefits." Doc. #56-3.

[7] Neither argument is relevant to Alston's motion for summary judgment. The MDES transcript and accompanying letter submitted in support of Alston's motion for summary judgment reflect that the MDES administrative law judge "determined that no hearing was necessary." Doc. #41-1 at 1. Moreover, the determination of Alston's unemployment eligibility is irrelevant to his retaliation claim.

With regard to the alleged video footage, the discovery deadline in this action was October 23, 2017. Doc. #28. Under Local Uniform Civil Rule 7(b)(2)(C), a "party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline." Accordingly, Alston's discovery-related issues regarding the video footage are untimely and are of no consequence to his motion for summary judgment.

7

framework, he sufficiently establishes the first two elements of his prima facie case of retaliation. He engaged in a protected activity when he filed charges of discrimination against MDOT with the EEOC. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has made a charge … under this subchapter."). And, Alston's termination is an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282–83 (5th Cir. 2004) ("Even under this court's stringent 'ultimate employment action' standard, it is beyond dispute that a termination constitutes an adverse action.").

Alston fails, however, to establish the final element of his prima facie case—causation. In seeking summary judgment, Alston contends that "[t]his case involves a former Superintendent for MDOT who is now a current Prairie Farm Dairy employee conspiring with his good friend Luvel Cooler Manager Mr. Hutchison to [h]ire[] and fire[] plaintiff from his General Cooler job at Luvel." Doc. #42 at 4–5. Beyond these conclusory allegations, Alston fails to identify portions of the record that demonstrate how his termination at Prairie Farms and his EEOC charge against MDOC are causally connected—as he, the moving party, must. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) ("Plaintiffs' conclusory beliefs that Defendants [were acting] in retaliation for Plaintiffs filing a lawsuit and complaining about racial discrimination are inadequate to demonstrate a causal connection.").

Because Alston has failed to satisfy his burden of establishing a prima face case, his motion for summary judgment will be denied.

### C. Prairie Farms' Motion for Summary Judgment

In its motion for summary judgment, Prairie Farms argues that (1) Alston's retaliation claims under Title VII and § 1981 must fail because he cannot show a causal connection between

his protected activity and his termination and (2) the doctrine of judicial estoppel precludes Alston from claiming he was dragooned into leaving MDOT for Prairie Farms. Doc. #44 at 7–10.

*1. Alston's evidentiary objections*

As an initial matter, Alston objects to the declarations in Prairie Farms' motion for summary judgment because they have not been notarized. Doc. #52; *see also* Doc. #46 at 8; Doc. #47 at 2. Federal Rule of Civil Procedure 56 permits the use of supporting declarations in a motion for summary judgment. Such declarations need not be notarized so long as they are made "under penalty of perjury" and are "true and correct." 28 U.S.C. § 1746. All of the declarations to which Alston objects conform to § 1746 by including the language, "I … affirm under penalty of perjury that the foregoing is true and correct." *See* Docs. #43-1, #43-3, #43-4, #43-5. Accordingly, Alston's objections to the declarations submitted in support of Prairie Farms' motion for summary judgment are overruled.

Additionally, Alston seeks to strike the excerpts of his deposition attached to Prairie Farms' motion for summary judgment because the entire transcript of the deposition was not included, which he argues is unfair. Doc. #52. Federal Rule of Civil Procedure 56 provides that parties may support their factual positions by "citing to particular parts of materials in the record, including depositions." Fed. R. Civ. P. 56(c)(1)(A). There is no requirement that a party submit a complete transcript of a deposition in support of its motion for summary judgment. Accordingly, Alston's motion to strike will be denied.

*2. Merits*

As discussed above, Alston has established the first two elements of a prima facie case of retaliation—he undertook a protected activity and suffered an adverse employment action. Prairie Farms argues that because Alston has failed to show a causal connection between his protected

9

activity and his termination, summary judgment should be granted in its favor.

At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff typically establishes a causal connection between a protected activity and a subsequent adverse employment action through temporal proximity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In construing the temporal proximity requirement, the Fifth Circuit has held that a "two-and-a-half-month gap" between a protected activity and alleged retaliation is sufficiently close in time to establish causation at the prima facie stage. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). The Fifth Circuit has been reluctant to hold that timeframes beyond two-and-a-half months, alone, are sufficient to establish prima facie causation. *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 & n.9 (5th Cir. 2011) (collecting cases) (gaps of three, four, and five months, alone, held insufficient for prima facie causation).

Alston's most recent EEOC charge of discrimination against MDOT was filed on July 13, 2015. Doc. #41-4. The alleged retaliatory adverse action occurred on November 5, 2015, when Prairie Farms terminated Alston's employment. Doc. #43 at 141. Thus, the nearly four-month gap between the filing of his EEOC charge of discrimination and his termination is, on its own, insufficient to establish a causal connection between the two events. *See Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28–29 (5th Cir. 2005) (three-month gap insufficient to establish causal nexus at prima facie stage).

Alston's conclusory allegations regarding the alleged plot between Price and Hutchison provide no support for establishing prima facie causation. *Body by Cook*, 869 F.3d at 390 (conclusory beliefs that defendants were retaliating against plaintiff inadequate to establish prima facie causation); *see Eberle v. Gonzales*, 240 F. App'x 622, 629 (5th Cir. 2007) ("[Plaintiff's]

subjective belief that he was retaliated against, without more, is not sufficient to survive summary judgment."). The summary judgment record reflects that Alston had previously applied to work at Prairie Farms on at least six previous occasions because it was his "dream job." Doc. #43-2 at 54, 57. The record also establishes that he left MDOT because he was "constructively discharge[d]" due to a hostile work environment, not because Price forced him to leave. *Id*. at 154. Moreover, it was only after Alston applied for the job at Prairie Farms that Price told Alston that it would be a good place for him to work. *Id*. at 105.

Accordingly, there is no record evidence establishing a causal connection between Alston's protected activity and his subsequent termination. Because Alston has failed to establish a prima facie case of retaliation, Prairie Farms is entitled to summary judgment.

### D. Alston's Remaining Motions

Because Prairie Farms is entitled to summary judgment, Alston's motion for judgment as a matter of law and his motion to continue trial will be denied as moot.

In his April 5 motion to strike and for default judgment, Alston argues the Court should strike all of Prairie Farms' responsive pleadings and enter default judgment against it because Prairie Farms "intentionally withheld and/or destroyed video surveillance footage" and violated Federal Rule of Civil Procedure 11 by submitting a declaration of Smith in response to his March 19 motion for sanctions. Doc. #83 at 2–4. Specifically, Alston argues that Prairie Farms "act[ed] with bad faith and commit[ed] fraud on this Court in presenting [the] Declaration of Rodney Smith … [and] offer[ing] no proof that the cameras' [sic] is just live feed and does not record." *Id*. at 3.

During his deposition, Alston admitted that he did not know if the cameras were recording or whether they merely showed a live feed, *see* Doc. #43-2 at 93; and he has not offered any evidence that the video he seeks was recorded. Accordingly, his claim that Prairie Farms

11

committed fraud on the Court by submitting Smith's declaration that the cameras in question "maintained live-feed, closed circuit surveillance," Doc. #79-1 at 1, must fail. *See* Fed. R. Civ. P. 11(c)(2) (motion for Rule 11 sanctions "must describe the *specific conduct* that allegedly violates Rule 11(b)") (emphasis added).

To the extent Alston seeks to strike Prairie Farms' responsive pleadings on the basis that that Prairie Farms withheld the purported video evidence, his request for such is untimely given that the discovery deadline in this case expired over five months ago on October 23, 2017.[8] With regard to Alston's assertion that Prairie Farms improperly destroyed relevant video footage, for the "severest remedies," like striking pleadings, the Fifth Circuit "require[s] a finding of bad faith or willful misconduct." *Pressy v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). As discussed above, Alston admitted that he does not know whether such video footage exists and offers no evidence that it did exist or that Prairie Farms has acted in bad faith. Accordingly, to the extent Alston seeks to strike Prairie Farms' responsive pleadings based on his allegation that Prairie Farms destroyed the purported video footage, the request must be denied. Because Alston has demonstrated no basis to strike Prairie Farms' pleadings, his request for entry of default judgment based on them being stricken will be denied.

V
**Conclusion**

For the reasons above:

1. Alston's motion [41] for summary judgment is **DENIED**;

2. Prairie Farms' motion [43] for summary judgment is **GRANTED**;

3. Alston's motion [52] to strike is **DENIED**;

---

[8] *See* Doc. #28; *see also* note 7, *supra*.

4. Alston's motion [53] to correct is **GRANTED**;

5. Alston's motion [56] for judicial notice is **DENIED**;

6. Alston's motion [61] for judgment as a matter of law is **DENIED as moot**;

7. Alston's motion [73] to continue trial is **DENIED as moot**; and

8. Alston's motion [83] to strike and for default judgment is **DENIED**.

**SO ORDERED**, this 16th day of April, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**